LUIS CASTRO FELIÚ, demandante y apelado, *v.* REXACH RACING & SPORTING CORPORATION, demandada y apelante.

Núm. 8485.—*Sometido:* Febrero 2, 1942. *Resuelto:* Marzo 4, 1942.

*Luis Sánchez Bahamonde* y *Heriberto Torres Solá,* abogados de la apelante; *Leopoldo Felíu,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se pide la desestimación del recurso interpuesto en este caso por no ser apelable la orden recurrida. Para resolver la cuestión planteada precisa fijar los antecedentes de esa resolución.

En abril 18, 1940 Luis Castro Feliú demandó a la Rexach Racing and Sporting Corporation, una corporación doméstica dedicada a la explotación del hipódromo "Las Casas," pidiendo que se dictara sentencia en su contra ordenándole practicar liquidación de los beneficios netos obtenidos de "carreras de caballos y juegos de *pool,* bancas y *subscriptions funds*" celebrados en su hipódromo durante determinado período, fijándose "la suma que corresponde al demandante," y así fijada se la pague con intereses, costas y honorarios de abogado.

Contestó la demandada negando las alegaciones de la demanda y pidiendo que ésta fuera declarada sin lugar, con costas y honorarios. Fué el pleito a juicio y la corte lo resolvió por sentencia de diciembre 30, 1940, ordenando a la demandada la práctica de la liquidación "de los beneficios netos por ella obtenidos en la celebración de carreras de caballos en el hipódromo 'Las Casas' desde octubre 18 de 1937 hasta junio 30 de 1938, a los fines de fijar la suma que de dichos beneficios y de acuerdo con las estipulaciones del contrato celebrado con el demandante le corresponde al mismo; y una vez fijados y determinados dichos beneficios netos" los pague con intereses y costas.

La demandada consintió la sentencia. El demandante pidió a la corte que la reconsiderara y enmendara "disponiendo en ella que la demandada rinda la ameritada cuenta de beneficios incluyendo en ella los ingresos por ella tenidos de dichas carreras y juegos." Pidió también que se calcularan los intereses desde junio de 1938 y se condenara en honorarios a la demandada.

Su moción fué resuelta en enero 8, 1941, como sigue:

"Vista la moción del demandante sobre reconsideración y enmienda de sentencia, se declara sin lugar la misma.

"La condena de honorarios de abogado descansa en la sana discreción del tribunal sentenciador habida cuenta del grado de temeridad de la parte perdidosa, y cuando hay diferencia entre lo pedido en la demanda y lo concedido en la sentencia no puede haber temeridad por parte del demandado al defenderse.

"No procede la concesión de intereses sobre una cantidad que aún no ha sido liquidada y que no lo había sido en junio 30 de 1938."

En enero 30, 1941 la demandada presentó su liquidación y en febrero 6 siguiente su objeción a la misma el demandante alegando que no se habían incluído, entre otros ingresos, los procedentes de subscription funds. Veinte días más tarde la demandada impugnó la moción de objeción. Sostuvo en substancia que en la sentencia no se había ordenado la inclusión en la liquidación de los beneficios obtenidos por

subscription funds, ni por otras actividades fuera de las carreras de caballos, quedando ello ratificado por la negativa de la corte a reconsiderar su sentencia.

En mayo 27, 1941, la corte resolvió la cuestión, como sigue:

"La sentencia de esta corte que declaró con lugar la demanda ordena que por la demandada se practique una liquidación de los beneficios netos obtenidos por ella en la celebración de carreras de caballos en el hipódromo 'Las Casas' desde octubre 18 de 1937 hasta junio 30 de 1938, a los fines de fijar la suma que de dichos beneficios y de acuerdo con las estipulaciones del contrato celebrado con el demandante le corresponde al mismo.

"Firme dicha sentencia, la demandada se limitó a radicar una relación de ingresos y egresos incompleta, pues en la misma existen solamente los ingresos procedentes de pool, bancas, y taquillas durante el período a que se refiere la sentencia, faltando los ingresos que por otros conceptos, tales como 'subscription fund', arrendamiento de las cantinas, y servicio de radio, obtuvo la misma durante dicho período.

"Dispone el contrato que la demandada pagará al demandante un tanto por ciento de los beneficios netos que se obtengan por la corporación en los días de carreras de caballos que se celebren en el hipódromo de la demandada, y que se entenderá por ganancias netas de la corporación los beneficios que se obtengan como resultado de las carreras de caballos que se celebren, después de descontar, entre otros gastos, todos los gastos conocidos en los hipódromos como 'de carreras,' tales como pago del personal del pool, subscription fund, etc., lo que demuestra que durante los días de carreras es que se juega el subscription fund y que el demandante tiene derecho a participar de los beneficios que la corporación pueda obtener por tal concepto, pues no puede jugarse al subscription fund sin la celebración de carreras.

"Se ordena a la demandada que dentro de diez días radique una relación, y sirva copia de la misma al demandante, de todos los ingresos y egresos de la misma en los días en que se celebraron carreras de caballos en el hipódromo 'Las Casas' durante el período comprendido entre octubre 18 de 1937 a junio 30 de 1938, todo ello en cumplimiento de la sentencia dictada en este caso.

"Se señala el día 25 de junio de 1941, a las nueve de la mañana, para oír a las partes, en cuyo día podrán comparecer las mismas

asistidas de sus abogados y practicar prueba con relación al contenido de dicha relación o a las objeciones que el demandante formule; debiendo la demandada traer consigo y tener a disposición del demandante, todos sus libros, records y comprobantes que acrediten los ingresos y egresos tenidos por la misma durante las fechas a que se refiere la sentencia y durante los días en que se hayan celebrado carreras de caballos en el hipódromo 'Las Casas.' ''

Y fué contra esa resolución que se interpuso el recurso cuya desestimación se pide.

El artículo 295 del Código de Enjuiciamiento Civil, ed. 1933, es el que determina de cuáles sentencias y resoluciones de las cortes de distrito se puede apelar para ante este Tribunal Supremo. Los números uno y dos del mismo son inaplicables. Sólo en el tercero estaría comprendido este caso si la resolución apelada tiene el carácter de ''una providencia especial dictada después de sentencia definitiva.''

En *Ríos et al.* v. *Ríos,* 15 D.P.R. 280, 281, citando casos anteriores, se dijo:

''Asimismo hemos resuelto que, para que dicha orden constituya tal providencia especial, la materia objeto de la reclamación no debe ser de tal naturaleza que pueda ser revisada mediante una apelación interpuesta contra la sentencia misma. (Véanse los casos de *José Martínez* v. *José Pilar,* 3 Dec. de P. R., 135. *Sucesión María Díaz* v. *José Avalo,* 2 Dec. de P. R., 637.) ''

Y en *Hernáiz, Targa & Co.* v. *Vivas,* 20 D.P.R. 106, 109, también haciendo referencia a decisiones anteriores, se reiteró la jurisprudencia en los siguientes términos:

''Esta Corte Suprema de Puerto Rico en el caso de *Ayoroa* v. *Sucesión Méndez,* 13 D.P.R. 286, 290, invocando lo decidido en el de *Avalo Sánchez* v. *Sucesión Díaz,* resolvió que a los efectos del número 3 del artículo 295 del Código de Enjuiciamiento Civil, se entiende por providencia especial aquella que lesiona un derecho al resolver sobre una cuestión no discutida en el pleito, ni resuelta por la sentencia definitiva, o que provee en contra de lo resuelto por la sentencia.''

Son de peso los argumentos de la parte apelante al sostener que la orden apelada tiene el carácter de una providen-

cia especial dictada después de sentencia de acuerdo con la ley y la misma jurisprudencia citada por la parte apelada, ya que dicha sentencia no contenía pronunciamiento específico alguno sobre los beneficios derivados del subscription fund y la orden apelada había resuelto por vez primera el asunto en forma contraria a lo ya decidido por la sentencia y ratificado por la orden declarando sin lugar la reconsideración que le pidiera el demandante.

Siendo ello así, existiendo por lo menos duda fundada de si puede o no calificarse de providencia especial la apelada, dependiendo la calificación de todas las circunstancias concurrentes, parece lo razonable que se dé a la parte que interpuso el recurso una oportunidad completa de discutir los méritos del mismo. Una vez discutidos, la Corte se encontrará en mejores condiciones de impartir justicia substancial a ambas partes.

*La moción de desestimación debe, pues, declararse por ahora sin lugar y a fin de que el asunto no se dilate indebidamente, se señala la vista del recurso para el siete de abril próximo a las dos de la tarde.*